**Linda K. TATUM, Plaintiff,**

v.

**Richard BOKOFSKY and Pan–American Life Insurance Company, Defendants.**

**No. 91–6714–CIV.**

United States District Court, S.D. Florida.

Jan. 10, 1994.

Patrick Gent, David L. Swimmer, P.A., Miami, FL, for plaintiff.

Pamela J. Reynolds, Warwick & Reynolds, Coral Gables, FL, for defendant Pan–American Life Ins. Co.

Richard Bokofsky, pro se.

### FINAL SUMMARY JUDGMENT

ZLOCH, District Judge.

#### INTRODUCTION

THIS MATTER is before the Court upon Plaintiff's Motion For Partial Summary Judgment (DE 11), filed by the Plaintiff, Linda K. Tatum, and upon Defendant's Motion For Summary Judgment (DE 5), filed by

the Defendant, Pan–American Life Insurance Company (hereinafter "PALIC"). This Court has carefully considered the merits of these pleadings, and notes that in ruling on these motions that this Court has considered only those matters permitted by Rule 56(c) of the Federal Rules of Civil Procedure, and not arguments, proffers or representations by counsel.

■ Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

■ To summarize, the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

■ The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987). The standard for granting summary judgment is the same as the standard for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The appellate courts generally, therefore, will affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury. *Anderson*, 477 U.S. at 252–256, 106 S.Ct. at 2512–14; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir.1987). The evidence of the non-movant is to be believed, however, and all justifiable inferences are to be drawn in their favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes*, 814 F.2d at 609; *Borg–Warner Acceptance Corp. v. Davis*, 804 F.2d 1580 (11th Cir.1986).

## *BACKGROUND*

The events in this case are clear. In fact, the Plaintiff, Linda K. Tatum, has adopted the statement of material facts (DE 12) provided by the Defendant, PALIC.

On August 10, 1989, the Plaintiff enrolled in a group health insurance policy called the "Ben–E–Med Plan" (hereinafter "the plan") through her employer, Charlee of Broward. The Defendant PALIC furnished the plan to provide major medical expenses, life insurance, and other coverage to its eligible participants and their beneficiaries.

While applying for coverage under the plan, the Plaintiff disclosed that she had uterine fibroid tumors, noting "benign fibroid tumors—no problems—no need for f/u care." (DE 5 at 3) This condition qualified as a pre-existing condition under the plan, and therefore any payment for the treatment of this condition remained subject to certain limitations as explained to her in Article III, Section 4 at page 45 of the summary plan description.

These limitations, however, were in turn subject to a waiver of the pre-existing condition limitation under the policy, because employees of Charlee of Broward were insured for major medical benefits under a prior plan of insurance. The Defendant's waiver in this case provided for benefits up to a maximum of $1,500 when the claimed medical condition occurs within the first 12 months of coverage.

Subsequent to her enrollment in this plan, the Plaintiff underwent surgery to remove the fibroid tumors, and then she submitted a claim for benefits. Accordingly, the Defen-

dant, PALIC provided coverage in the amount of $1,500 pursuant to the terms and conditions of the plan.

The Plaintiff, however, believes that she is entitled to a larger payment from the Defendant. According to the Plaintiff, under Florida Statute 627.666 relating to insurance, the Defendant is obligated to pay benefits equal to the lesser of the benefits which would have been payable for the medical treatment under the Plaintiff's prior insurance plan, or the coverage which would be available under the subsequent PALIC plan, were it not for the pre-existing condition limitation. The Plaintiff also makes this contention by way of traditional tort and contract claims.

Relying upon Florida Statute 627.666, the Plaintiff further contends that her case is not preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461. (hereinafter "ERISA"). In Plaintiff's Motion For Partial Summary Judgment (DE 11), and Plaintiff's Memorandum Of Law In Response To Pan–American's Motion For Summary Judgment (DE 9), the Plaintiff asserts that her case falls within the savings clause of ERISA, Title 29 U.S.C. § 1144(b)(2)(A), and therefore remains governed by state law.

Second, the Plaintiff argues, in the alternative, that even if ERISA does preempt her claims, PALIC is nevertheless estopped from denying coverage, because PALIC misrepresented the coverage available to the Plaintiff, and that she reasonably relied upon these representations to her detriment. Moreover, these oral representations are not voided by ERISA, the Plaintiff contends, because they "were not representations which changed the provisions of the policy, but rather were representations which interpreted the benefits available to this particular employee under these particular circumstances." (DE 11 at 2)

In response, the Defendant argues that the Plaintiff's case is clearly subject to federal preemption under the ERISA. As tort and contract actions, the Plaintiff's claims are void. *See* Title 29 U.S.C. § 1144. Likewise, the Plaintiff's state statutory argument is unavailing. According to the Defendant, Florida Statute 627.666 does not create a

private cause of action, nor does it not apply to the insurance policy at issue. Under Florida Statute 627.6515, the Defendant argues, its insurance policy meets the test for exclusion from the requirements of Florida Statute 627.666, because the policy is allegedly in compliance with the three elements of Section 627.6515(2).

Finally, the Defendant argues that since this case is controlled by federal law, the Plaintiff cannot attempt to enforce oral modifications of a unambiguous plan through an estoppel argument. Consequently, the Defendant contends that this Court should grant summary judgment in its favor, because the Plaintiff has already admitted that the Defendant processed the insurance claim in accordance with the original terms of the plan.

### DISCUSSION

The Plaintiff's central argument rests on Florida Statute 627.666. This statute defines the liability of a succeeding insurer upon the replacement of a group, blanket, or franchise health insurance policy. However, based upon the record presented before this Court, this Court finds that the provisions of Florida Statute 627.666 have no effect upon the outcome of this case.

Specifically, the Court doubts whether the statute actually applies to the Defendant's plan pursuant to Florida Statute 627.6515(2). As stated by the Defendant, this related section provides that:

> This part does not apply to a group health insurance policy issued or delivered outside this state under which a resident of this state is provided coverage if: a) The policy is issued to an employee group ... b) Certificates evidencing coverage under the policy are issued to residents of this state and contain in contrasting color and not less than 10–point type the following statement: 'the benefits of the policy providing your coverage are governed primarily by the law of the state other than Florida.' ... and c) The policy provides the benefits specified in sections 627.419, 627.6574, 627.6575, 627.6579, 627.6613, 627.667, and 627.6675.

This provision apparently exempts out-of-state groups from the requirements of Florida Statute 627.666 when the health policy at issue meets the conditions set forth in subsections (a), (b), and (c) of section 627.-6515(2).

Both parties dispute the application of Florida Statute 627.6515(2). In this case, the Defendant contends, through motion and affidavit, that section 627.6515(2) controls and that they have met its conditions. In response, the Plaintiff has offered only argument by counsel that the Defendant has failed to meet its burden of showing that they have met the conditions of section 627.-6515(2). Given the possible application of Florida Statute 627.6515(2), the relevancy of section 627.666 remains tenuous. More importantly, however, even if this Court were to find that section 627.666 applies to the Defendant, the Plaintiff's reliance upon Florida Statute 627.666 would still fail to protect this case from federal preemption under ERISA.

In particular, the Plaintiff's reliance is misplaced because Florida Statute 627.666 neither creates an express private right of action, nor is it an essential element of the Plaintiff's tort and contract claims. Generally, the federal courts are "reluctant to read private rights of action in state laws where state courts and state legislatures have not done so." *Farlow v. Union Cent. Life Ins. Co.,* 874 F.2d 791, 795 (11th Cir.1989).

█ In this case, nothing in the text or history of Florida Statute 627.666 suggests that the section carries a private cause of action, thus this Court declines to read one into the statute. Without clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the obvious authority of the states to sculpt the content of the state law. *Farlow,* 874 F.2d at 795. In essence, the Plaintiff asks this Court to legislate a cause of action where none exists.

The federal courts, however, are not legislative entities. A federal judge's oath to the federal Constitution requires this Court to interpret the law—not make it. This is ex-actly what Alexander Hamilton warned against when he wrote:

> The Courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body.

*The Federalist No. 78,* at 396 (A. Hamilton) (Bantam Classic Edition 1982). Ultimately, the state statute through which the Plaintiff hopes to escape ERISA is irrelevant because section 627.666 does not delineate an independent cause of action. Moreover, without a clear state statutory foundation, the Plaintiff's traditional common law causes of action remain preempted by ERISA. *See Swerhun v. Guardian Life Ins. Co.,* 979 F.2d 195, 198 (11th Cir.1992). The ERISA preemption analysis makes this ruling clear.

In deciding whether a federal statute preempts state law, a court needs to ascertain Congress' intent in enacting the federal statute at issue. Preemption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

In the case of ERISA, the Congress has declared that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to employee benefit plans." Title 29 U.S.C. § 1144. The preemption provisions of ERISA are deliberately expansive, and designed to make Federal authority the "sole power to regulate the field of employee benefit plans." *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The application of this broad preemption provision, however, is not absolute, and when courts consider the·question of preemption, they must do so according to a multi-step analysis.

The first step of this analysis is to determine whether the plan in question constitutes an ERISA "plan." Under Title 29 U.S.C. Section 1002(1), ERISA defines an employee welfare benefit plan as "any plan, fund or program ... established or maintained by an

employer or by an employee organization" for the purposes of providing medical and other benefits for its members "through the purchase of insurance or otherwise."

If the plan involved in a suit constitutes an ERISA plan, the court must turn to step two, and apply the two-part analysis set forth in *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) to determine if ERISA preempts. Under the first part of this analysis, the Court must ascertain if the claim at issue "relates to" an ERISA plan under Title 29 U.S.C. Section 1144(a). A claim relates to an ERISA plan when the law "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). Thus, a state law may "relate to" a benefit plan, and therefore be preempted, even "if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, 498. U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

In the second part of the *Dedeaux* analysis, a court must ascertain if the state law falls within the ERISA savings clause. The ERISA saving clause is a provision that limits the general preemptive effect of the ERISA statute. Under Title 29 U.S.C. § 1144(b)(2)(A), the saving clause states that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any state which regulates insurance...." This section, when applicable, carves out an exception to the general rule of preemption.

In *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85· L.Ed.2d 728 (1985), the Supreme Court has adopted a two-prong test for determining whether state law regulates insurance within the meaning of the ERISA savings clause. First, the state law at issue must fall within a "common-sense view" of the words of the savings clause itself. Second, the law must also regulate the "business of insurance." *See Willett v. Blue Cross and Blue Shield*, 953 F.2d 1335, 1341 (11th Cir.1992).

In order to clarify this second prong, the Supreme Court has outlined three criteria: 1) Whether the practice has the effect of transferring or spreading the policy holder's risk, 2) Whether the practice is an integral part of the policy relationship between the insurer and the insured, and 3) Whether the practice is limited to entities within the insurance industry. *Metropolitan Life*, 471 U.S. at 744, 105 S.Ct. at 2391, (citing *Union Labor Life insurance Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)).

These three questions were designed to harmonize ERISA with the right of the several states to regulate the "business of insurance" under the McCarran–Ferguson Act. See 15 U.S.C. § 1011–1015 (1982). According to the Court in *Metropolitan Life*, Congress wants to insure that states retain the ability to tax and regulate the business of insurance. Consequently, a state regulation falls within the protection of the saving clause when the state practice "regulates the business of insurance."

During the final step of the pre-emption analysis, a court must consider the "deemer clause." Under Title 29 U.S.C. § 1144(b)(2)(B), the deemer clause makes clear that a state law which purports "to regulate insurance" cannot "deem" an employee benefit plan to be an insurance company. In this way, the deemer clause creates a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. *Mullenix v. Aetna Life and Casualty Insurance Co.*, 912 F.2d 1406, 1413 (11th Cir.1990).

■ This preemption analysis applies to the Plaintiff's tort and contract claims. In this case, the employer covered the entire cost of an insurance plan offered by PALIC to provide medical benefits to. Charlee employees, and thus, this arrangement falls within the Section 1002(1) definition of an ERISA "plan." This Court also finds that the second requirement for pre-emption exists. Specifically, this Court finds that the claim "relates to" an ERISA plan under Title 29 U.S.C. Section 1144(a). Indeed, Plaintiff's claim is essentially a suit for insurance benefits under the plan.

The remaining aspects of the preemption analysis are not relevant. First, the tort and contract actions do not attempt to regulate

insurance, and therefore they do not fall within the scope of the savings clause. Secondly, the deemer clause does not apply, because the Defendant, PALIC, who insured the plan, is an actual insurance company, and thus the state law claims at issue are not attempting to "deem" the Defendant an insurance company. *See DiGuiseppi v. Life General Security Insurance Co.*, 1992 U.S.Dist. LEXIS 4884, 6 Fla. L. Weekly Fed. D 103, 1992 WL 80955 (M.D.Fla.1992).

■ Given these findings, this Court finds that the Plaintiff's tort and contract claims are preempted by ERISA. The Eleventh Circuit has consistently held that ERISA preempts state law breach of contract claims. *See First Nat. Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.*, 960 F.2d 1546, 1550 (11th Cir.1992). Moreover, the Supreme Court has squarely held that ERISA preempts "state common law tort and contract actions asserting improper processing of a claim for benefits." *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 43, 107 S.Ct. 1549, 1550, 95 L.Ed.2d 39 (1987). In fact, ERISA preempts state common law breach of contract and tort claims for benefits under ERISA-regulated benefit plans, even when the ERISA statute itself is not mentioned in the pleading.

Since ERISA governs this case, the Defendant is entitled to summary judgment. ERISA prohibits oral modifications of an employee benefit plan. *See Meadows v. Cagle's, Inc.*, 954 F.2d 686 (11th Cir.1992). In *Meadows*, the Eleventh Circuit held that:

> This Circuit's rejection of oral modifications to plan documents reflects both the Court's and Congress' shared concern for ensuring that beneficiaries are fully and clearly apprised of their rights and obligations under an ERISA-covered plan.

*Meadows* 954 F.2d at 692. Consequently, the plan at issue must be executed according to its original terms. In this case, the Plaintiff has offered no evidence that the original terms of the plan were not honored. In fact, the Plaintiff has admitted that the original terms were followed, and has merely argued unsuccessfully that other terms should apply.

■ This ruling is not disturbed by the Plaintiff's estoppel argument. In *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.1990), the Eleventh Circuit has held that "equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee plans governed by ERISA, because ERISA specifically addresses these issues." Equitable estoppel may apply only when the representations made are interpretations, not modifications, of the plan. *Novak v. Irwin Yacht & Marine Corp.*, 986 F.2d 468 (11th Cir.1993).

In this case, the Plaintiff is attempting to enforce an oral modification of the plan, not an oral interpretation of the plan's meaning. The law is well-settled that for a representation to be an interpretation of a plan, the relevant provisions of the plan must be ambiguous, that is to say, "reasonable persons could disagree as to [the provisions'] meaning and effect." *Kane*, 893 F.2d at 1285. The plan at issue, however, does not contain the requisite ambiguity.

Accordingly, after due consideration, it is

**ADJUDGED** as follows:

1) That the Defendant's Motion For Summary Judgment (DE 5), filed herein by the Defendant, Pan–American Life Insurance Company, be and the same is hereby **GRANTED;**

2) That the Plaintiff's Motion For Partial Summary Judgment (DE 11), filed herein by the Plaintiff, Linda K. Tatum, be and the same is hereby **DENIED;**

3) That Summary Final Judgment be and the same is hereby entered in favor of Defendant, Pan–American Life Insurance Company, and against the Plaintiff, Linda K. Tatum, and said Plaintiff shall take nothing by this action as to the Defendant, Pan–American Life Insurance Company, and said Defendant shall go hence without day; and

4) That to the extent not otherwise disposed of herein, all pending motions are hereby **DENIED** as moot.

**DONE AND ORDERED.**