In re **ROYAL FOOD MARKETS, INC.,** d/b/a **Royal Foods, Debtor.**

**ROYAL FOOD MARKETS INC., d/b/a Royal Foods, Plaintiff,**

v.

**U.S. BERKEL FOOD MACHINES, INC., d/b/a Miami Equipment Distributors, Defendant.**

**Bankruptcy No. 90–15835–BKC–SMW. Adv. No. 90–0458–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 6, 1990.

Juan Zorilla, Miami, Fla., for plaintiff.

Leonardo P. . Mendez, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the court upon the complaint of Royal Food Markets, Inc. (the "debtor") against U.S. Berkel Food Machines, Inc. (the "creditor") for declaratory relief and for a determination as to the validity, priority and extent of a lien, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this court pursuant to 28 U.S.C. § 157(a), (b) and § 1334. This is a core proceeding in which the court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(K).

The debtor and the creditor entered into an agreement entitled "Equipment Lease" by which the creditor agreed to purchase supermarket equipment from various third parties and then lease the equipment to the debtor. The agreement provides for a fixed lease term commencing on the date of

execution and expiring on the date the last payment is delivered by the debtor following the opening of the supermarket of the debtor. The agreement also provides the debtor the option of purchasing the equipment at the end of the lease term for the sum of $10.00.

The creditor, alleging a breach of the agreement by the debtor, brought a state court action against the debtor seeking to repossess the equipment. In November, 1989, the state court entered an order which authorized the issuance of a temporary writ of replevin upon the debtor's failure to make the payments required under the lease, pending a final adjudication of the rights of the parties to the equipment. In August, 1990, the debtor filed its petition under Chapter 11 of the Bankruptcy Code. Thereafter, the debtor instituted this adversary proceeding seeking a determination as to the validity, priority and extent of any lien held by the creditor on the equipment as a result of the execution of the Equipment Lease.

The debtor contends that the Equipment Lease is no more than a disguised security agreement and as such the creditor's security interest in the equipment is unperfected in that a UCC–1 financing statement was never filed by the creditor. The creditor contends that the equipment is held by the debtor pursuant to a "true lease" and wishes to enforce the terms of the lease agreement to regain possession of the equipment.

■ Whether an agreement is a true lease or a security agreement is to be determined by the facts of each case. Fla. Stat. § 671.201(37); *In re Mountain Carpet, Inc.*, 11 B.R. 729 (Bankr.D.Vt.1979); *In re Dunn Bros., Inc.*, 16 B.R. 42 (Bankr. W.D.Va.1981); *In re AAA Machine Co., Inc.*, 30 B.R. 323 (Bankr.S.D.Fla.1983). Most courts look to a combination of factors in determining whether an agreement is a lease or a security agreement. Whether an option to purchase is included in the agreement is one of the most often applied factors and is one which is specifically addressed by the Uniform Commercial Code. Florida has adopted the Uni-

form Commercial Code and Fla.Stat. § 671.201(37) states as follows:

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

■ In determining whether the consideration paid for the exercise of the option was nominal, several courts have applied the "economic realities" test which states that, "If at the end of the term of the lease, the only economically sensible course for the lessee is to exercise the option to purchase the property, then the agreement is a security agreement." *See In re AAA Mach. Co., Inc.*, 30 B.R. at 324, 325, *citing Percival Construction Co. v. Miller and Miller Auctioneers*, 532 F.2d 166 (10th Cir. 1976); *In re International Plastics, Inc.*, 18 B.R. 583 (Bankr.D.Kan.1982); *In re Dunn Bros. Inc.*, 16 B.R. 42 (Bankr.W.D. Va.1981).

This Court has previously adopted a second test which examines the relationship of the option price to the original purchase or list price and holds that if the option price is less than 25% of the original purchase or list price then the consideration is regarded as nominal. *In re AAA Mach. Co., Inc.*, 30 B.R. at 325. In the case at bar, the option price to purchase the equipment at the expiration of the lease is $10.00 or approximately .000027 percent of the original equipment cost and thus meets the above cited 25% test. This Court finds from the evidence presented, and considering the initial down payment and the total sum of lease payments to be made under the agreement, that the only economically sensible course for the debtor to take at the end of the lease term would be to exercise the option. Having made such a finding, this Court concludes that the consideration

to be paid by the debtor for the purchase option was nominal.

The default and remedies provision of the lease agreement also provides further insight as to whether the lease was intended as security. The Equipment Lease provides that in the event of default by the lessee, the lessor may expose the equipment and resell the equipment. This provision continues to state that, "In the event Lessor takes possession of the Equipment, Lessor shall give Lessee credit for any sums received by Lessor from the sale or rental of the Equipment after deduction of the expenses of sale or rental and Lessor's residual interest in the Equipment." This provision recognizes the creation of an equity or pecuniary interest in the lessee. *See In re Dunn Bros., Inc.,* 16 B.R. at 45. Upon the recognition of such an interest, the parties are deemed as a matter of law to have intended the lease as security. *In re AAA Mach. Co., Inc.,* 30 B.R. at 325. Thus, this Court concludes that because the consideration to be given for the purchase option is nominal, and because the lease agreement recognizes an equity interest in the debtor, the agreement is a lease intended for security pursuant to Fla.Stat. § 671.201(37).

■ Having found that the agreement is a lease intended as security rather than a true lease, the Court will now address the issue of perfection. To perfect a security interest in collateral, Florida law requires that a creditor either file a financing statement in the appropriate office pursuant to Fla.Stat. § 679.302 or that the creditor take possession of the collateral pursuant to Fla.Stat. § 679.305. The creditor concedes that it did not perfect its security interest in the equipment by filing a financing statement. However, it urges the Court to consider that the agreement obligated the debtor to advance to the creditor the fee required to file a financing statement. Since the debtor did not pay the creditor the required fee, the creditor argues that the debtor should be estopped from arguing that the creditor is unsecured based on the fact that it did not file a financing statement.

The Court is not persuaded by the argument of the creditor. Although the agreement obligated the debtor to advance to the creditor the cost of the filing fee, it was the obligation of the creditor to actually record the financing statement. The filing of the financing statement protects the creditor and puts third parties on notice as to the interest of the creditor in the equipment.

■ The creditor also contends that the temporary order it obtained in state court had the effect of giving the creditor possession of the equipment. However, this order was merely a declaration by the state court that if the debtor failed to make certain deposits into the registry of the court or failed to make certain lease payments pending final adjudication of the rights of the parties, the creditor could make an application to the court stating the nature of the debtor's failure to comply and that the creditor would be entitled to the immediate issuance of a writ of replevin. As such, the temporary order that the creditor obtained in state court did not have the effect of giving the creditor actual physical possession of the equipment which is required in order to perfect a security interest in collateral under Florida Statute, Section 679.305.

Based on the foregoing, this Court finds that the Equipment Lease executed by and between the debtor and the creditor is a lease intended as security and as such must comply with Florida law relating to perfection. The Court also finds that the creditor failed to perfect a security interest in the equipment and is an unsecured creditor of this estate.

A separate Final Judgment will be entered in accordance herewith.